**Opinion filed October 16, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00035-CV
_____

**MICHAEL L. WILLIAMS,**
**COMMISSIONER OF EDUCATION, Appellant**
**V.**
**STERLING CITY INDEPENDENT**
**SCHOOL DISTRICT ET AL., Appellees**

**On Appeal from the 345th District Court**
**Travis County, Texas**
**Cause No. D-1-GV-10-000124**

## O P I N I O N

This appeal involves sovereign immunity and public school funding, specifically the application of former Section 42.2516(h) of the Texas Education Code as it existed from 2007–2009.[1] The dispute centers on whether

---

[1]*See* Act of May 12, 2006, 79th Leg., 3d C.S., ch. 5, § 1.04, 2006 Tex. Gen Laws 45, 46–49 (codified at TEX. EDUC. CODE § 42.2516), *repealed by* Act of June 2, 2009, 81st Leg., R.S., ch. 1328, 2009 Tex. Gen. Laws 4173. Although it was repealed effective September 1, 2009, former Section 42.2516(h) remains applicable to the events of this suit. Unless otherwise noted, when referencing the Education Code in this opinion, we are referring to the Code as it existed at the relevant time.

Section 42.2516(h), as enacted in House Bill 1 (HB1), authorized the Texas Commissioner of Education[2] to use all state aid and current local tax revenues to calculate "excess revenue" when determining the amount of local tax revenue that the State[3] "clawed back"[4] from Appellees: Sterling City Independent School District, Highland Independent School District, and Blackwell Consolidated Independent School District. The trial court determined that Section 42.2516(h) did not authorize the Commissioner to calculate excess revenue in that manner and that the Commissioner committed an ultra vires act when he failed to limit his calculations of excess revenue to the three factors specified in Section 42.2516(h). The trial court held that, as a result, the Commissioner overcharged Appellees and that the "amount overcharged . . . should be credited back" to Appellees. The Commissioner appealed, and we affirm.

## I. *Introduction and Background Facts*

When it enacted HB1 in 2006, the Texas Legislature added Section 42.2516(h) to the Texas Education Code. HB1 had multiple goals, one of which was to address the Texas Supreme Court's ruling in *Neeley v. West Orange-Cove Consolidated Independent School District* that local ad valorem taxes had become an impermissible state property tax in violation of Article VIII, section 1-e of the Texas Constitution. *Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*,

---

[2]Robert Scott was the Commissioner of Education at that time, but Michael L. Williams has since been appointed to replace Robert Scott as Commissioner.

[3]In this opinion, we may refer to the Texas Education Agency (TEA), which operates and manages the school finance system, as the State.

[4]We note that this "clawback" was in addition to the recapture amounts paid by each district under Section 41.002 of the Texas Education Code. *See* TEX. EDUC. CODE ANN. § 41.002 (West 2012). The trial court referred to the "Robin Hood" nature of the school finance system. Judge Dietz has recently held that the current Texas school finance system is inadequate, unsuitable, financially inefficient, and unconstitutional. *See Tex. Taxpayer & Student Fairness Coalition v. Michael Williams, Comm'r of Educ., in his Official Capacity*, No. D-1-GN-11-003130 (200th Dist. Ct., Travis County, Tex. Aug. 28, 2014).

176 S.W.3d 746, 754 (Tex. 2005); *see* TEXAS CONST. art. VIII, § 1-e. The legislature intended for Section 42.2516(h) to provide state aid for school districts to replace local funding lost in the tax compression program, which lowered and compressed local property taxes. Section 42.2516(h) was an effort to ensure that each school district in Texas received a certain level of funding per student in weighted average daily attendance (WADA). Section 42.2516(h) provided:

> Notwithstanding any other provision of this title, if the amount of state and local revenue per student in weighted average daily attendance for the maintenance and operations of the district available to the district in a school year as a result of increases to the equalized wealth level under Section 41.002, the basic allotment under Section 42.101, and the guaranteed level under Section 42.302 . . . exceeds the amount to which a district is entitled under Subsection (b)[5] for that school year, the commissioner must:
>
>> (1) reduce the amount of state aid provided to the district for that school year by an amount equal to the excess revenue, as determined by the commissioner; or
>>
>> (2) for a district with a wealth per student greater than the applicable amount described by Section 41.002(a), require the district to purchase a number of attendance credits for that school year at a cost equal to the amount of excess revenue, as determined by the commissioner.

Former EDUC. § 42.2516(h) (footnote added).

While Section 42.2516(h) was still in effect, Appellees each experienced significant property value increases and tax collections that resulted in increased property tax revenues. Based on calculations that took into account each district's total state funding and *all* local tax revenue increases, the Commissioner notified

---

[5]Under this subsection, a district's funding floor, or "target revenue," was calculated by adding (1) the greatest amount of local and state revenue available to a district for maintenance and operations per student in WADA out of three possible applications; (2) $2,500 per each classroom teacher, librarian, counselor, or nurse in the district; and (3) $275 per each student in the district in average daily attendance in grades nine through twelve. Former EDUC. § 42.2516(b).

3

Appellees that they owed "clawback" amounts to the State pursuant to Section 42.2516(h). The Commissioner interpreted Section 42.2516(h) to authorize the State to "claw back" all excess local tax revenue that exceeded the "target revenue" as calculated under Section 42.2516(b). In response to the Commissioner's demand for payment of "clawback" amounts, Sterling City ISD filed suit, alleging that the Commissioner had misinterpreted Section 42.2516(h) and attempted to "claw back" amounts not authorized under the statute. Highland ISD and Blackwell CISD intervened with nearly identical claims.[6] Prior to trial, Sterling City ISD and Blackwell CISD paid all of the "clawback" amounts demanded by the Commissioner. Highland ISD paid only a portion of the demanded "clawback" amount and still had an outstanding balance with the State.

In an analogy used by the trial court and the State, a school district's overall funding is akin to a bowl of porridge, the size and contents of which are determined by Section 42.2516(h) and other provisions, and includes both state aid and local maintenance and operations (M&O) tax revenue.[7] Section 42.2516 sets a floor and ceiling for district funding, i.e. small and large bowls, and when a district's "large bowl" overflows, the State "claws back" excess target revenue or "porridge."

Appellees contend that the Commissioner acted ultra vires when he "clawed back" excess revenue based on factors other than equalized wealth level, basic allotment, and guarantee level: the three factors specified in Section 42.2516(h). *See* former EDUC. § 42.2516(h). In other words, Appellees assert that Section 42.2516(h) mandated that only three "ingredients" were to be included in

[6]Sterling City ISD and Highland ISD filed suit based on the 2008–2009 school year; Blackwell CISD filed suit based on the 2007–2008 school year.

[7]The trial court's reference is to Goldilocks and the Three Bears' small, medium, and large bowls of porridge.

the "porridge," and because the legislature specified the recipe, the State could not add to it another ingredient, such as *all* local district tax revenue from current collections on increased property tax values. The trial court agreed with the Appellees. We characterize the trial courts order that the extra tax revenue was akin to "raisins" in the porridge; the State could "claw back" "porridge" but not "raisins."

## II. *Evidence and Rulings*

The trial court conducted a one-day bench trial. It was undisputed that the Commissioner determined excess revenue under Section 42.2516(h) by considering increases in the Appellees' revenue that did not stem from the three factors specified in that statute. Using only the three factors, Joe Wisnoski, a former Deputy Associate Commissioner for School Finance for the Texas Education Agency, calculated that the State should have only "clawed back" excess revenue of $605,260 from Sterling City ISD; $624,929 from Blackwell CISD, and $289,083 from Highland ISD. The Commissioner had calculated "clawback" amounts at $1,037,994 from Sterling City ISD, $1,744,052 from Blackwell CISD, and $1,743,959 from Highland ISD.

Dr. Lisa Dawn-Fisher, the Deputy Associate Commissioner of School Finance for the TEA at the time of trial, defended the Commissioner's interpretation of Section 42.2516. Dr. Dawn-Fisher also explained that the State uses a ledger system in which credits and adjustments are made for a district's funding.

Based on largely undisputed facts, the trial court found that the school districts and the State, through the Commissioner, have an ongoing financial relationship and that the Commissioner maintains a ledger, based on information provided by the state comptroller, county appraisal districts, and the districts

themselves. Adjustments are made through an ongoing process and are carried over to the subsequent year. The trial court found that Appellees sought such an adjustment, not a cash recovery, and that, in light of their equalized wealth level, Appellees will not likely receive state funding but will owe amounts in the future for recapture and excess revenues calculated under Section 42.2516. The trial court concluded that credits or adjustments can be made to a district's ledger for any improper clawback amounts without requiring the State to pay retrospective monetary damages.

The trial court also ordered the following "declaratory" relief, which we quote in relevant part:

1. Plaintiffs' claims against the Commissioner acting in his official capacity for exercising discretion not authorized by statute are not barred by sovereign immunity.

3. Plaintiffs are not seeking retrospective relief for money damages; therefore, their claims are not barred by sovereign immunity.

4. Declaratory relief is proper under Tex. Civ. Prac. & Rem. Code § 37.004(a).

5. Section 42.2516(h) limits claw back of excess revenues to increases resulting from increases to HB 1 funding elements for equalized wealth level, basic allotment, and guaranteed yield. The Commissioner failed to calculate these amounts.

6. The Commissioner's failure to properly calculate excess revenue was an *ultra vires* act. The Commissioner unlawfully clawed back incorrect amounts of excess revenue.

8. The specific language in § 42.2516(b) and (h) controls over general language in other provisions and controls the calculation of excess tax revenues and "claw back" of those

6

revenues. The Commissioner has no discretion to apply the statutes in any manner other than as written by the legislature.

The trial court ultimately determined: "The amount overcharged is the amount that [the] Commissioner improperly charged the districts and should be credited back to the districts using accounting procedures regularly used by the Commissioner in settling Foundation."[8] The trial court denied the portion of the Commissioner's plea to the jurisdiction that related to Appellees' claims under Section 42.2516.

### III. *Issues Presented*

In his brief, the Commissioner presents a single issue on appeal. That issue contains three subparts in which the Commissioner questions (1) whether the trial court erred when it asserted subject-matter jurisdiction in this case despite Section 42.2516(*l*)'s prohibition, (2) whether the trial court erred in failing to defer to the Commissioner's interpretation of Section 42.2516(h), and (3) whether the trial court erred by awarding retrospective damages without identifying a waiver of sovereign immunity.[9] The Commissioner argues that there has been no legislative waiver of immunity and that Section 42.2516(*l*), which provided that a determination "under this section is final and may not be appealed," precluded this suit. The Commissioner further argues that the State is immune from any claim for monetary damages because such damages constitute prohibited retrospective relief. Because Sterling City ISD and Blackwell CISD had paid all of the disputed amounts at the time of trial, the Commissioner contends that the only possible

---

[8]The trial court recognized that retrospective damages are not authorized, and it issued the credit award in an attempt to adhere to that rule.

[9]We note that the Commissioner also presents a conditional argument regarding the award of attorneys' fees to Appellees. Based on our rulings on the three subparts of the Commissioner's issue, we need not address the conditional complaint regarding attorneys' fees. *See* TEX. R. APP. P. 47.1.

7

remedy with respect to those two districts was retrospective damages. Because Highland ISD had not paid all of the disputed amounts and had an outstanding balance, the Commissioner acknowledges on appeal that Highland ISD must be treated differently, but the Commissioner contends that, to the extent that the trial court's judgment requires him to credit amounts already paid by Highland, the trial court's judgment awarded retrospective relief and should be reversed.

IV. *Standard of Review*

A trial court's order on a plea to the jurisdiction that sovereign immunity is not applicable and that a plaintiff has affirmatively demonstrated subject-matter jurisdiction is reviewed de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues that are raised. *Id.* at 227; *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001). If there is no question of fact as to the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. We apply a de novo standard of review to the trial court's ruling on the plea to the jurisdiction. *Id.*

We also review de novo the trial court's decision to award prospective "declaratory" relief of future credits to Appellees. The trial court's determination that the credits did not constitute prohibited retrospective relief but, instead,

8

constituted permissible prospective relief was a conclusion of law.[10] *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009); *City of Houston v. Williams*, 216 S.W.3d 827, 828 (Tex. 2007); *Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 134–35 (Tex. App.—Austin 2009, pet. denied); *see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (conclusions of law reviewed de novo).

V. *Analysis*

To address the Commissioner's contentions, we must first decide whether the Commissioner acted outside his discretion and thereby committed an ultra vires act. If so, sovereign immunity from suit is not an issue in this case. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). If we determine that the trial court had subject-matter jurisdiction over the suit, then we must address the issue of immunity from liability because the relief sought in an ultra vires suit against a state official may implicate immunity. *See Heinrich*, 284 S.W.3d at 373–74. In such suits, a trial court is authorized to award prospective relief only, as governmental immunity bars awards of retrospective monetary relief. *See id.* at 368–69.

### A. *Sovereign Immunity and Ultra Vires Act*

To receive judicial review of an administrative decision, it is generally the plaintiff's burden to demonstrate that his case falls outside the jurisdictional bar of sovereign immunity by showing either (1) that a statute provides for judicial review or (2) that the agency decision is unconstitutional. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007). "In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to

---

[10]We therefore reject Appellees' contention that, by failing to request findings of fact, the Commissioner waived his affirmative defense of immunity from liability.

suit." *Miranda*, 133 S.W.3d at 224; *see Fed. Sign*, 951 S.W.2d at 405. Sovereign immunity includes two distinct principles, immunity from suit and immunity from liability. *Miranda*, 133 S.W.3d at 224; *Fed. Sign*, 951 S.W.2d at 405. The State is afforded sovereign immunity both as to suit and as to liability unless the legislature expressly waives it. *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 224.

A suit against a state official lawfully exercising his governmental functions is considered a suit against the State and is barred by sovereign immunity absent legislative consent. *Dir. of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265–66, 270 (Tex. 1980); *Scott*, 392 S.W.3d at 136; *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied). However, a suit brought to determine or protect a private party's rights against a state official who has committed an ultra vires act is not barred by sovereign immunity. *Heinrich*, 284 S.W.3d at 368 (citing *Fed. Sign*, 951 S.W.2d at 405). Such a suit does not attempt to exert control over the State but, rather, attempts to reassert the control of the State. *Id.* at 372. In *Federal Sign*, the Texas Supreme Court explained:

> A state official's illegal or unauthorized actions are not acts of the State. Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission.

*Fed. Sign*, 951 S.W.2d at 404 (citations omitted).

To fall within the ultra vires exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately

10

prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372; *see also State v. Epperson*, 42 S.W.2d 228, 231 (Tex. 1931) ("the tax collector's duty . . . is purely ministerial"). The distinction between a valid ultra vires claim and one seeking to control state action turns on the particular acts of the state official and construction of the relevant statutory or constitutional provisions to determine whether those acts are within or beyond the state official's discretionary authority. *Dir. of Dep't of Agric. & Env't*, 600 S.W.2d at 265–70.

Section 42.2516(h) provided that, if a school district experienced increases to its (1) basic allotment, (2) guaranteed level, or (3) equalized wealth level that caused its yearly M&O revenue to exceed its target revenue, the Commissioner was authorized to "claw back" the district's excess revenue. Appellees adduced at trial a series of charts that depicted calculations that used the three factors. The calculation of "target revenue" under Section 42.2516 is not to be confused with the "excess revenue." As Wisnoski explained, one of the three factors in Section 42.2516(h), equalized wealth level, was defined in Section 41.002 and took into consideration prior year property tax values.

Based on the doctrine of *expressio unius est exclusio alterius*, that the enumeration of specific factors excludes all unspecified factors, we hold that Section 42.2516(h) limited clawback of a district's excess revenue to only that revenue attributable to the funding elements listed in the statute. *See* former EDUC. § 42.2516(h); *see also In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008) (stating that the legislature chooses a statute's language with care, purposefully omitting those words not chosen); *Commercial Standard Ins. Co. v. Bd. of Ins. Comm'rs of Tex.*, 34 S.W.2d 343, 344 (Tex. Civ. App.—Austin 1930, writ ref'd) (finding that, when the legislature undertakes, in considerable detail, to prescribe the factors that

authorize the powers and duties of a state agency, without giving the agency authority to fix or regulate all other factors, such a limitation must be construed as "a legislative denial of such power").

We hold, therefore, that the trial court did not err when it held that the Commissioner directly violated Section 42.2516(h) and committed an ultra vires act when he recovered excess revenue attributable to factors other than those specified in Section 42.2516(h). Although Section 42.2516(*l*) provided the Commissioner with a large amount of discretion, it did not authorize the Commissioner to act contrary to the statute's express terms when he made a determination under Section 42.2516(h). *See* former EDUC. § 42.2516(*l*). Section 42.2516(*l*)'s ban on appeals from the Commissioner's determination under Section 42.2516 does not apply here because the Commissioner's determination constituted an ultra vires act—an act outside the mandate of Section 42.2516.

*B. Prospective Remedy or Relief*

Even though the Commissioner's ultra vires act negated his immunity from suit, the remedy sought by Appellees may still implicate immunity. *See Heinrich*, 284 S.W.3d at 373. The Commissioner claims that the trial court erred when it held as a matter of law that sovereign immunity did not apply because the remedy sought, a declaration for the award of future credits, was in reality a request for prohibited retrospective monetary damages. It is well settled that a plaintiff cannot circumvent sovereign immunity by characterizing a suit for money damages as a claim for declaratory relief. *Id.* at 371. The Texas Supreme Court in *Heinrich* considered what specific *remedy* can be properly sought under an ultra vires claim. *Id.* at 373–76. The court held that, absent legislative authorization, retrospective relief consisting of monetary payments by the government implicates sovereign immunity. *Id.* at 369–70. Conversely, prospective relief would not implicate

12

immunity even if the judicially enforced compliance with the applicable statutory or constitutional provisions resulted in monetary payments by the government. *See id.* at 375–76; *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 633–34 (Tex. App.—Austin 2007, pet. denied) (prospective declaratory, injunctive, and mandamus relief not barred by immunity). The supreme court stated:

> This compromise between prospective and retroactive relief, while imperfect, best balances the government's immunity with the public's right to redress in cases involving *ultra vires* actions, and this distinction "appear[s] in the immunity of the United States, and in the law of most states' immunity from state-law claims." It also comports with the modern justification for immunity: protecting the public fisc. Moreover, it is generally consistent with the way our courts of appeals have interpreted *Williams*. And finally, it ensures that statutes specifically directing payment, like any other statute, can be judicially enforced going forward.

*Heinrich*, 284 S.W.3d at 375–76 (citations omitted).

Based upon the ongoing set of accounting ledgers for each district for the Foundation School Program, which includes amounts owed to school districts by the State and amounts owed to the State by school districts, the trial court determined that future adjustments to the ledgers "using accounting procedures" to credit Appellees' accounts for the overcharges that were impermissibly "clawed back" from them under Section 42.2516(h) did not constitute retrospective relief. The continuing nature of the school districts' relationship with the Foundation School Program and the nature of payments and credits and the carryover from year to year of a district's ledger allows for a future credit and does not require a payment of money. For the reasons outlined above, the credits that the trial court ordered the Commissioner to issue constituted permissible prospective relief. We also hold that the credits for those amounts that were inappropriately clawed back were appropriate to the harm caused by the Commissioner because they were no

13

more and no less than the amounts the Commissioner wrongfully "clawed back" from each Appellee. We overrule the Commissioner's issue, including all three of the subparts.

## VI. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

October 16, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.