# IN THE SUPREME COURT OF TEXAS

══════════
No. 14-0986
══════════

MIKE MORATH, COMMISSIONER OF EDUCATION, PETITIONER,

v.

STERLING CITY INDEPENDENT SCHOOL DISTRICT, HIGHLAND
INDEPENDENT SCHOOL DISTRICT, AND BLACKWELL CONSOLIDATED
INDEPENDENT SCHOOL DISTRICT, RESPONDENTS

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE ELEVENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

JUSTICE JOHNSON, joined by JUSTICE WILLETT, JUSTICE GUZMAN, and JUSTICE BOYD, concurring in part and dissenting in part.

The parties strongly disagree about whether the Education Code (Code) authorized the Commissioner of Education to clawback approximately three million dollars in local property tax revenue from Sterling City ISD, Blackwell CISD, and Highland ISD. Although the plurality broadens the inquiry to essentially include the entire school finance construct, the parties do not do so: they agree that the part of the Code at issue here is former section 42.2516, and more specifically, former subsections 42.2516(h) and (*l*). The Commissioner says that subsection (h) gave him the authority to clawback the revenue in question and subsection (*l*) made his decisions final and unappealable. The School Districts say subsection (h) did not give him the authority he claims; his mandate that the Districts reduce their "excess revenue" was *ultra vires*; and because his

determination lacked a legal basis in subsection (h), subsection (*l*) did not make his determination unreviewable.

The subsections in question provided:

(h) Notwithstanding any other provision of this title, if the amount of state and local revenue per student in weighted average daily attendance for the maintenance and operations of the district available to the district in a school year *as a result of increases to the equalized wealth level under Section 41.002, the basic allotment under Section 42.101, and the guaranteed level under Section 42.302* . . . exceeds the amount to which a district is entitled under [the target revenue of] Subsection (b) for that school year, the commissioner must:

(1) reduce the amount of state aid provided to the district for that school year by an amount equal to the excess revenue, as determined by the commissioner; or

(2) for a district with a wealth per student greater than the applicable amount described by Section 41.002(a), require the district to purchase a number of attendance credits for that school year at a cost equal to the amount of excess revenue, as determined by the commissioner.

. . .

(*l*) A determination by the commissioner *under this section* [42.2516] is final and may not be appealed.

TEX. EDUC. CODE § 42.2516(h), (*l*) (emphasis added).[1] The parties agree that the Commissioner's clawback determinations were not made on the basis of any of the three factors specified in subsection (h); rather, they were made on the basis of increased local property tax collections based on sudden and significant increases in property values in the Districts.

The plurality's decision turns in part on the language of subsection 42.2516(*l*), as it should, in light of that subsection's plain language. But in larger part, the plurality's decision turns on the

---

[1] The statutes in effect at the time of this case have since been amended. All references to the Education Code will be to the version in effect at that time. *See* Act of May 12, 2006, 79th Leg., 3d C.S. ch. 5, 2006 Tex. Gen. Laws 45.

overall concept of the Foundation School Program, as it should not, in light of the plain language of both subsections 42.2516(h) and (*l*). The language of subsection 42.2516(*l*) is clear that determinations by the Commissioner "under" section 42.2516 are unreviewable. But I disagree with the plurality's conclusion that subsection 42.2516(*l*) "broaden[s] the executive's discretion" and vests the Commissioner with unlimited, unreviewable discretion to make clawback determinations outside the authority specified in subsection 42.2516(h). *Ante* at ___. Unquestionably, the Legislature may limit judicial review of the Commissioner's decisions. *See id.* However, in this instance the Legislature specifically limited review only as to a "determination . . . under this section." TEX. EDUC. CODE § 42.2516(*l*). Because the Commissioner's determination in this case was outside the clawback authority granted to him by subsection 42.2516(h), his determination was not "under" section 42.2516. To the contrary, the Commissioner's clawback determination was not authorized by the Code, was *ultra vires*, and was not subject to the limitations in subsection (*l*). For the reasons expressed below, I concur in the dismissal of the claims of Sterling City ISD and Blackwell CISD, as well as dismissal of Highland ISD's claim for amounts it has already paid by purchasing attendance credits. But I dissent from the dismissal of Highland ISD's claim for prospective declaratory and injunctive relief and the claims for attorney's fees as to all parties.

## I. Jurisdiction

This Court has long recognized that when a governmental officer acts *ultra vires*—beyond his granted authority—the unauthorized actions are not acts of the State. *Hous. Belt & Terminal Ry. v. City of Houston*, ___ S.W.3d ___, ___ (Tex. 2016) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997)). An officer acts *ultra vires* for either failing to perform a ministerial act or

for exercising limited discretion in conflict with authority granted by a statute authorizing the officer to act. *Id.* We explained in *Houston Belt* that if an official's authority is less than absolute and the official acts outside that limited authority, the acts are *ultra vires*. *Id.* at ___. To determine whether a grant of authority is absolute or limited, we consider the grant of authority and give effect to the enacting body's intent. *Id.* at ___. The question is not whether the granting body intended to grant the official authority to exercise discretion, but rather whether it intended to grant the official *absolute* discretion. *Id.* at ___.

In *Houston Belt*, a City of Houston ordinance gave the Director of Public Works and Engineering authority to determine drainage charges to be imposed on "benefitted properties" based on a specified rate per square foot of impervious surface. *Id.* at ___. The ordinance defined "benefitted property" and "impervious surface," and provided that the area of impervious surface "shall be determined on the basis of digital map data . . . or other similar reliable data" as determined by the Director. *Id.* Several property owners filed suit claiming the Director acted outside his authority by using the method he did for determining certain properties were benefitted and in determining the amount of impervious surface area of those properties. *Id.* We looked to the language of the ordinance to determine the limits of the Director's authority, keeping in mind that our primary objective in construing an ordinance is to ascertain and give effect to the enacting body's intent. *Id.* at ___. As for the Director's determination of which properties were "benefitted properties," we concluded that he had discretion to make the determination, but no discretion to interpret the term in a way contrary to the definition itself. *Id.* at ___. The ordinance defined a "benefitted property" as one that discharges into the city drainage utility system. *Id.* at ___. The

4

property owners alleged that their properties were not "benefitted" because they did not discharge into the city's drainage system, but rather they discharged into natural bayous that were not within the definition of "drainage system." *Id.* at ___. Construing the pleadings liberally in the property owners' favor, we concluded the property owners alleged an *ultra vires* claim. Further, while the Director had discretion to determine whether the surface was impervious, it was not absolute discretion because the ordinance mandated the types of data to be used in making that determination. *Id.* at ___. Because the property owners alleged the Director used an unreliable method (aerial photography) to classify their properties as impervious, while the ordinance required the use of digital map data or similar "reliable" data, the pleadings were sufficient to allege a viable *ultra vires* claim with regard to his determination of the impervious nature of their properties. *Id.* at ___.

The plurality concludes that subsection 42.2516(*l*) makes the Commissioner's determinations under 42.2516(h) final and unappealable, that is, the Legislature granted the Commissioner complete discretion to make clawback determinations regardless of the basis for the determination. *Ante* at ___. In *Houston Municipal Employees Pension System v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007), we held that judicial review was precluded where a statute provided a pension board's determinations were "final and binding." But in that case we only addressed the availability of judicial review, not whether the pension board had complete discretion. We did, however, address the issue of the "final and binding provision" on the pension board's discretion in a subsequent case. *See Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1 (Tex. 2015).

In *Klumb*, we considered whether courts had authority to review the pension board's actions under an *ultra vires* theory notwithstanding the statutory ban on judicial review. *Id.* at 8. The

5

plaintiffs argued that the Pension System's interpretation of the statutory term "employee" was *ultra vires* because it was in conflict with the plain language of the statute. *Id.* at 9. We concluded that the plaintiffs failed to plead an actionable *ultra vires* claim because the pension board's interpretation did not conflict with the other statutory terms. *Id.* at 10-11. We did not, however, foreclose the possibility that a particular interpretation of the statute *could* be *ultra vires* despite the ban on judicial review. *Id.* at 11. We explained that the board may not violate the statute, but absent "a manifest conflict with statutory terms" or a "conspicuous and irreconcilable conflict," courts could not review the board's actions. *Id.* at 10-11.

The plurality says that the effect of language limiting judicial review such as that in subsection 42.2516(*l*) is to broaden the executive's discretion. *Ante* at ___. But it cites no authority for its statement, suggests no standard for limiting the discretion afforded, and offers no reason to disregard the clear language of subsection 42.2516(*l*) specifying that a determination only "under this section [42.2516]" is final and unappealable. Further, the plurality's statement conflicts with longstanding rules of statutory construction to the effect that we read the plain language of a statute to mean what it says—no more and no less—and that we do not read language into or out of a statute except to avoid absurd or nonsensical results. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014). The plurality's logic is hard to understand. The plurality substantively says that by specifically limiting judicial review of determinations under section 42.2516, the Legislature really intended not what it said, but rather what it did not say—to grant the Commissioner unlimited, unbounded discretion to make clawback determinations not authorized by section 42.2516. *Ante* at

6

\_\_\_.  And the plurality does not even attempt to justify its reading of language into (or out of, as the case may be) subsections 42.2516(h) and (*l*) as necessary to avoid nonsensical or absurd results.

As relevant to this matter, subsection 42.2516(h) contains two mandates.  First, the Commissioner *must* under certain circumstances either reduce the amount of state aid provided to a district or require the district to purchase attendance credits.  TEX. EDUC. CODE § 42.2516(h).  Second, the amount of any reduction or required attendance credit purchases are to be based on increases in the amount of state and local revenue "*as a result of*" increases to three specified subject matters:  (1) the equalized wealth level, (2) the basic allotment, and (3) the guaranteed level.  *Id.* (emphasis added).

In construing a statute, we must give effect to each word.  *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous.").  If the three specified factors are to be given effect according to the statutory language, they can only be read to specify what the Commissioner *must* consider, as well as limiting the Commissioner's discretion as to what he *may* consider.  Otherwise, the language in subsection (h) "as a result of increases to the equalized wealth level under Section 41.002, the basic allotment under Section 42.101, and the guaranteed level under Section 42.302" is surplusage, that is, it is meaningless and superfluous.  *See id.*

Just as the statute did in *Klumb*, subsection 42.2516(h) grants broad discretionary authority to the Commissioner.  But even given that broad discretion, the Commissioner may not act outside what has been granted to him.  His actions may not create a "manifest conflict" or a "conspicuous and irreconcilable conflict" with the statutory terms granting him the discretion and authority to act.

7

*See Klumb*, 458 S.W.3d at 11. Had the Legislature intended for the Commissioner to have discretion to clawback *all* excess revenue available to a district, and not just revenue as a result of increases in the three factors, it could have—and we must presume would have—said so, either by omitting the language the Court's decision makes surplusage, or by specifying the other factors the Commissioner could take into consideration. *See Synatzske*, 438 S.W.3d at 52 (courts must "take statutes as we find them, presuming the Legislature included words that it intended to include and omitted words it intended to omit").

JUSTICE BROWN agrees that the Commissioner's actions were *ultra vires* because subsection 42.2516(h) did not grant him the authority to clawback funds as he did. *Ante* at ___ (Brown, J., concurring). Yet JUSTICE BROWN also concludes that (1) there is no "conspicuous and irreconcilable conflict" between the Commissioner's actions and his authority under subsection 42.2516(h), and (2) the lack of such a conflict, together with subsection (*l*)'s provision making the Commissioner's determinations under section 42.2516 final and unappealable, precludes judicial review. *Id.* at ___. However, because the Commissioner's actions in clawing back millions of dollars from the Districts were not authorized by the statute, there is no realistic way to characterize his clawback actions as anything *less* than being in conspicuous and irreconcilable conflict with his statutory authority.

While the plurality's conclusion is essentially that the Commissioner had authority to clawback amounts attributable to any reason whatsoever because the Code did not explicitly prohibit him from doing so, the Commissioner does not argue that his authority is that broad. As the Court recently explained in *Morath v. Texas Taxpayer and Student Fairness Coalition*, ___ S.W.3d ___, ___ (Tex. 2016), recapture is part of the school finance system which accounts for districts with

8

property wealth exceeding the statutory limit. Those districts are given options to consolidate with another district, detach property, purchase average daily attendance credits, contract for the education of nonresidents, or consolidate their tax base with another district. *Id.* But as the Commissioner posits in his briefing here, and as his Commission-employed expert witness testified at trial, this is not a recapture case. This is a clawback case that turns only on the language of subsection 42.2516(h). The Legislature provided for dealing with property wealth discrepancies, but subsection 42.2516(h) simply does not authorize the Commissioner to deal with it in the manner he did in this case.

Because the Commissioner's decision to clawback several million dollars from the Districts was not a determination authorized by, that is, under, section 42.2516, the Districts' claims were for *ultra vires* acts of the Commissioner for which suit would lie and they were not subject to subsection 42.2516(*l*) for which his determinations would be final and unappealable. But even though I would not dismiss the claims for want of jurisdiction on the basis the Court does, I agree that some of the Districts' claims must be dismissed because they are for retrospective relief, as I explain below.

## II. Retrospective Relief

As we explained in *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009), even though a suit may allege a viable *ultra vires* claim against a governmental official, the suit is, for all practical purposes, against the State. Therefore, the available remedies are limited because, generally, retrospective monetary claims against the State are barred by immunity. *Id.* at 374. But a judgment that involves payment of money does not always implicate immunity—claims for prospective injunctive relief from the date of injunction (even those requiring expenditure of state

9

funds) are permissible. *Id.* However, "the line between prospective and retrospective remedies is neither self-evident not self-executing." *Id.* at 375 (quoting DOUGLAS LAYCOCK, MODERN AMERICAN REMEDIES 483 (3d ed. 2002)).

In *Heinrich*, Lilli Heinrich sued the El Paso Fireman & Policemen's Pension Board and others, alleging that her survivor benefits had been reduced in violation of state law. *Id.* at 369. She sought declaratory relief and an injunction to restore her benefits from the date of the violation. *Id.* We concluded that Heinrich's claims for prospective relief could go forward, but dismissed her claims for retrospective relief. *Id.* at 380. And in *Lowell v. City of Baytown*, 356 S.W.3d 499, 501 (Tex. 2011), we held that "firefighters' claims for back pay and related damages for improper calculation of pay for assignments performed in the past are the type of retrospective relief that we held barred by governmental immunity in *Heinrich*."

The trial court and court of appeals determined that based on the State's ongoing set of accounting ledgers that included amounts owed to districts by the State and amounts owed to the State by districts, future adjustments to the ledgers to credit the Districts' accounts for the amounts they had been overcharged and for which they had purchased attendance credits did not constitute retrospective relief. 447 S.W.3d 505, 514 (Tex. App.—Eastland 2014). The Commissioner asserts that because Sterling City ISD and Blackwell CISD paid all of the clawback required of them by the Commissioner via purchasing attendance credits, their only remedy is retrospective relief regardless of whether those past damages are repaid through future credits to their account. The Commissioner points out that the relevant part of the Education Code no longer exists, so the bottom line is no

10

matter how the Districts receive money back or a credit for money they paid, the net effect is they recover retrospective damages. I agree with the Commissioner, at least in part.

The Districts first assert that because the Commissioner did not challenge the trial court's findings that the Districts' injuries are ongoing and the State can adjust monies owing or due without having to pay money damages, those findings are binding on the Commissioner and this Court. They argue that appellate *de novo* review of the trial court's conclusion of law that the relief constituted permissible prospective relief must be conducted on the basis of the uncontested fact findings. However, when appellate courts conduct a *de novo* review, they independently determine each issue and accord the original court's decision no deference. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

The Districts next argue that the Commissioner's assertion that the Districts' claims are barred because they only sought retrospective relief is an affirmative defense that he waived because he failed to request findings of fact to support it. I disagree. A governmental officer's claim that a plaintiff is only seeking retrospective damages is not an affirmative defense. We have treated claims seeking retrospective damages as being barred by immunity from suit—which implicates courts' subject matter jurisdiction—and dismissing the claims. *See Heinrich*, 284 S.W.3d at 380 ("[Heinrich's] claims for prospective declaratory and injunctive relief against the Board members and the mayor in their official capacities may go forward, but we dismiss her retrospective claims against them."); *see also City of Dallas v. Albert*, 354 S.W.3d 368, 379 (Tex. 2011) ("Because the Officers sought only retrospective relief, their declaratory judgment claims must be dismissed."). Therefore, a request for findings of fact was not necessary in order to preserve the issue.

11

Although relief for an injury that occurred in the past is retrospective relief precluded by the Commissioner's immunity from suit, the Districts argue, and the trial court found, that the Districts' injuries are "ongoing." But I fail to see how they are. The Districts are complaining about a one-time clawback of money that they argue was improperly calculated for past school years. Because the statute has since been amended, these are injuries that occurred in the past and will not re-occur. In *Albert*, for example, we held that police officers and firefighters were seeking retrospective relief where they alleged that they sustained damages equal to the difference between the amount of their salaries *already paid* and the amount that should have been paid. 354 S.W.3d 378-79; *see Lowell*, 356 S.W.3d at 501 ("Here, the firefighters' claims for back pay and related damages for improper calculation of pay for assignments *performed in the past* are the type of retrospective relief that we held barred by governmental immunity in *Heinrich*." (emphasis added)).

We explained in *Heinrich* that "under federal immunity law, claims for prospective injunctive relief are permissible, while claims for retroactive relief are not," and concluded that "a claimant who successfully proves an *ultra vires* claim is entitled to *prospective injunctive relief, as measured from the date of injunction*." 284 S.W.3d at 376 (emphasis added). Here, the Districts requested injunctive relief requiring the Commissioner to comply with subsection 42.2516(h). But because the statute had been amended, the requested prospective injunctive relief was no longer possible. *See* TEX. CIV. PRAC. & REM. CODE § 65.011 ("A writ of injunction may be granted if . . . the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant . . . .").

12

In addition to determining that the Districts' damages were ongoing, the trial court and court of appeals also concluded that no payment of damages was required because the State and the Districts had an ongoing financial relationship that permitted the State to adjust amounts owed to or due from the Districts to remedy the damages. 447 S.W.3d at 514. I disagree that this remedy would not in substance involve the payment of money damages. We noted in *Heinrich* that prohibiting retrospective relief was consistent with the modern justification for immunity, that is, protecting the public fisc. 284 S.W.3d at 375. The immunity doctrine leaves it to the Legislature to determine when tax resources should be shifted from their intended use to pay money judgments. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015). Even though the judgment in this case did not require a money payment to the Districts, it required the shifting of state resources from their intended use to satisfy the judgment based on past activities. This was, in substance, prohibited retrospective relief. *See Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 139 (Tex. App.—Austin 2009, pet. denied) ("To the extent any relief . . . would result in repayment by the Commissioner of past amounts withheld from the School, these claims would result in retroactive relief that is barred by sovereign immunity in accordance with *Heinrich*.").

The Districts also cite *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 634-35 (Tex. App.—Austin 2007, pet. denied), where the court of appeals stated this Court has historically recognized that "suits to recover money or other property wrongfully taken or withheld by state officials from their rightful owners do not implicate sovereign immunity because, in concept, the disputed property never belongs to the state." But the court made the statement in the context of

13

equitable claims for back pay for work that had already been performed, which is not the situation here.

I would hold that the Districts' claims to recover the money clawed back from them are for retrospective relief and must be dismissed. However, as the Commissioner acknowledges (subject to his jurisdictional challenge), Highland ISD's claims for prospective injunctive relief regarding amounts it has not yet paid are not barred. Accordingly, I would remand that claim to the trial court for further proceedings.

### III.  Attorney's Fees

The trial court awarded attorney's fees jointly and severally to the Districts. In a declaratory judgment proceeding, a court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. Because I would hold that the Districts asserted viable *ultra vires* claims but, contrary to the judgment of the trial court, their payments to the State could not be recovered, and Highland ISD's claims are not entirely barred, I would remand the issue of attorney's fees to the trial court for it to consider whether an award is still equitable and just, and if so, in what amount. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 646 (Tex. 2013).

### IV.  Conclusion

I concur in dismissal of the claims of Sterling City ISD and Blackwell CISD, as well as Highland ISD's claim for amounts it has already paid by purchasing attendance credits. But I dissent from the dismissal of Highland ISD's claim for prospective declaratory and injunctive relief and the

14

claims of attorney's fees as to all parties.  I would remand those claims to the trial court for further proceedings.

_____
Phil Johnson
Justice

**OPINION DELIVERED:**  June 24, 2016