CHIEF JUSTICE HECHT
announced the judgment of the Court and delivered an opinion,
in which JUSTICE GREEN, JUSTICE LEHRMANN, and JUSTICE DEVINE joined.
Section 42.2516 of the Texas Education Code[1] requires the Commissioner of Education to make certain adjustments in state aid to school districts and provides that his determinations are “final and may not be appealed.”[2] In this ultra vires action, three school districts complain that the Commissioner exceeded his authority under the statute. We hold that the Legislature has made the decisions of which the districts complain beyond judicial review. We therefore reverse the judgment of the court of appeals[3] and dismiss the case for want of jurisdiction.
Texas public schools are funded largely by local ad valorem taxes and also by the State through the Foundation School Program (“FSP”). Texas has over 1,000 school districts, and local tax revenues vary widely among them. To reduce the disparities, the FSP provides state funding to property-poor districts and “recaptures” local revenue from property-rich districts.
For the past 30 years, school districts have complained that the FSP has not sufficiently equalized funding and have repeatedly challenged the public school finance system as being inefficient, inadequate, and unsuitable in violation of Article VII, Section 1 of the Texas Constitution.[4] *409 The FSP’s efforts to equalize funding among the districts by limiting local tax rates have also prompted challenges that the FSP operates as a statewide property tax prohibited by Article VIII, Section 1-e of the Texas Constitution.[5] We agreed with that challenge in Neeley v. West Orange-Cove Consolidated Independent School District.[6]
Following Neeley, the Legislature in 2006 enacted House Bill 1 (“HB 1”), overhauling the FSP.[7] The FSP is extremely complex, and its funding formulas are elaborate. We described it in some detail earlier this Term in the latest case involving challenges to its constitutionality.[8] Here we need only set out more generally the parts that are important to this case.
HB 1 retained the FSP’s basic structure. Two of its components, referred to as the basic allotment and guaranteed level, determine the level of FSP funding a district receives.[9] A third component, the equalized wealth level, a product of the basic allotment, is a statutory maximum value of local taxable property per student in weighted average daily attendance (‘WAJDA”). The equalized wealth level is used in determining recapture.[10] Together, these three components, with other relatively minor considerations, operate to determine a district’s per-WADA funding.
One facet of the extensive HB 1 changes, Section 42.2516, replaced limitations on local tax rates with a “compression” mechanism, lowering tax rates by one-third.[11] To “blunt the short-term effects of tax compression” on school districts,[12] the statute included a “hold harmless” mechanism[13] that is due to expire in 2017.[14] For any school district whose funding under statutory formulas did not reach a stated target revenue, the FSP would make up the difference.[15] By the same token, if a district’s per-student revenue exceeded its target revenue as a result of formula increases in its equalized wealth level, basic allotment, and guaranteed lev *410 el, a “Clawback Provision” required the Commissioner , to take steps to recover the excess. The provision, since repealed, stated:
Notwithstanding any other provision of this title, if the amount of state and local, revenue per student in weighted average daily attendance for the maintenance and operations of the district available to the district in a school year as a result of increases to the equalized wealth level under Section 41.002, the basic allotment under Section 42.101, and the guaranteed level under Section 42.302 made by [HB 1], exceeds the amount to which a district is entitled under Subsection (b) for that school year, the commissioner must:
(1) reduce the amount of state aid provided to the district for that school year by an amount equal to the excess ...revenue, as determined by the commissioner; or
(2) for a district with a wealth per student greater than the applicable amount described by Section 41.002(a), require the district to purchase a number of attendance credits for that school year at a cost equal to the amount of excess revenue, as determined by the commissioner.[16]
Section 42.2516 also included a “Finality Provision” which stated: “A determination by the commissioner under this section is final and may not be appealed.”[17] The Legislature has included such provisions throughout the FSP.[18]
While the “hold harmless” provisions were in effect, the Commissioner applied the Clawback Provision to five school districts that had experienced a revenue increase above their target levels, partly due to the operation of the FSP under HB 1 but also from higher tax revenues due to a rise in property values.[19] For these districts, in the first year HB 1 was operative, per-WADA actual revenue was nearly twice per-WADA target revenue. Only three of the districts are parties to the appeal now before us. The following table shows for each their per-WADA target revenue as compared to their per-WADA actual revenue:
*411 [[Image here]]
Concerned that the funding in these districts would be so much greater than in other school districts, the Commissioner applied the Clawback Provision to them, The total clawback amounts determined by the Commissioner and the parts attributable to the- FSP as distinguished from revenue increases are shown in this table:
[[Image here]]
These three Districts[20] sued the Commissioner for a declaratory judgment that he had exceeded his authority under the Clawback Provision and thus acted ultra vires. They asserted that the Clawback Provision applied only to excess revenues above target revenues resulting from the operation of HB 1-that is, from the three components listed in the provision: the equalized wealth level, the basic allotment, and the guaranteed level. The Commissioner did not dispute that part of the excess amounts he sought to recover did not result from the three FSP components listed in the Clawback Provision but contended he had broader authority 4o ensure that district revenues did "not exceed target amounts. He argued that his determinations were consistent with, and even necessary to, the proper operation of the FSP. In any event, the Commissioner asserted, the Finality Provision precluded judicial review, and the trial court therefore lacked jurisdiction over the Districts’ claim. The trial court denied the Commissioner’s plea to the jurisdiction and granted the Districts’ requested declaratory relief, plus attorney fees and costs.[21] The *412 court of appeals affirmed, holding that the Commissioner had acted ultra vires and therefore the Finality Provision was inapplicable.[22]
We granted the Commissioner’s petition for review.[23]
For well over 150 years, we have recognized the Legislature’s authority to limit judicial review of executive actions. In 1859, we explained: “No principle is more firmly established, than that where a special- and exclusive authority, is delegated to any tribunal or officer of the government, and no mode of revising his decision, by appeal or otherwise, is provided by law, his action is final and conclusive, of the matter submitted to his decision.”[24] This principle was added to the Texas Constitution in 1985.[25] Article V, Section 8 gives district courts general jurisdiction “except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.”[26] The Legislature’s power to limit judicial review of executive action is not unlimited. Judicial review of claimed violations of constitutional rights and’ infringement of vested property rights cannot be foreclosed.[27] But in other instances the Legislature may *413 make an executive’s actions final.[28]
The Districts argue that the Finality Provision precludes only an appeal from the Commissioner’s determinations under Section 42.2516, not an ultra vires suit to declare his determinations invalid. But the provision also makes the Commissioner’s determinations final. In Houston Municipal Employees Pension System v. Ferrell, we stated that “[t]he words ‘final and binding,’ when used to describe an administrative decision, preclude judicial review.”[29] The same is true of the word “final” alone. The Districts argue that Ferrell holds only that legislatively prescribed finality for an executive decision precludes review for an abuse of discretion, not for a statutory violation. The Districts contend that the Commissioner did not merely abuse his discretion in recovering revenue exceeding target levels for any reason other than the three listed in the Clawback Provision; rather, they contend, the Commissioner exceeded his authority under the statute.
The effect of a statute making an executive determination final is to broaden the executive’s discretion. The Districts point to Justice Blister's concurring opinion in Ferrell, raising the possibility that, notwithstanding a statute making an executive decision final, an agency’s clear violation of a governing statute might be subject to judicial review.[30] The Court itself has not endorsed that view, but in Klumb v. Houston Municipal Employees Pension System, a case involving the same agency and the same statutes as in Ferrell, we assumed without deciding that Justice Brister’s suggestion might be correct and proceeded to conclude that the pension board had not abused its discretion.[31] We stated, however, that an ultra vires challenge to executive action made final by statute could not be brought absent a “manifest”, “conspicuous and irreconcilable” conflict between the action and the statutory authority asserted by the executive.[32] The Court has never allowed a challenge to an executive decision made final by statute.
The Clawback Provision required the Commissioner to recover revenue exceeding target levels because of the operation of the FSP under HB 1 but did not prohibit him from recovering revenue that for other reasons exceeded target levels. The Districts argue that the authority conveyed by the provision was exclusive. The Commissioner concedes that the Districts’ interpretation of the statute is reasonable and might prevail absent the Finality Pro *414 vision. But the Commissioner argues that because his determinations under Section 42.2516are final, he has the authority to prevent school districts from exceeding target revenue inconsistent with the FSP. In these circumstances, we agree. The FSP is a complex system that must operate within constitutional boundaries. The “hold harmless” provisions of Section 42.2516were designed to operate for only a few years. The Commissioner was legitimately concerned that the revenue levels experienced by the Districts trespassed those boundaries. Though the Districts’ funding in excess of target levels for one year certainly posed no threat to the system as a whole, the Commissioner’s determination to treat those districts like all other school districts is not a conflict with Section 42.2516, much less a manifest, conspicuous, and irreconcilable conflict. On the contrary, the Commissioner’s determination was consistent not only with Section 42.2516but with the FSP as a whole. To allow the Districts’ challenge in these circumstances would circumvent the Legislature’s plain limitation on judicial review.
[[Image here]]
The Finality Provision precludes the Districts’ challenges to the Commissioner’s decision to recover revenue from them under the Clawback Provision. The trial court therefore lacked jurisdiction to hear the Districts’ ultra vires suit. Accordingly, we reverse the court of appeals’ judgment and dismiss the case for want of jurisdiction.

. Id. § 42.2516(h) (codified until 2009 as § 42.2516(1)); Act of June 1, 2009, 81st Leg., R.S., ch. 1328, § 57, 2009 Tex, Gen. Laws 4173, 4194 [HB 3646], amending Act of May 12, 2006, 79th Leg., 3d C.S., ch. 5, § 1.04, 2006 Tex. Gen. Laws 45, 48-49 [HB 1],

. 447 S.W.3d 505 (Tex.App.-Eastland 2014).

. Edgewood Indep. Sch. Dist. v. Kirby, 777 S.W.2d 391 (Tex.1989); Edgewood Indep. Sch. Dist. v. Kirby, 804 S.W.2d 491 (Tex.1991); Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist., 826 S.W.2d 489 (Tex. 1992); Edgewood Indep. Sch. Dist. v. *409 Meno, 917 S.W.2d 717 (Tex.1995); W. Orange-Cove Consol. Indep. Sch. Dist. v. Alanis, 107 S.W.3d 558 (Tex.2003); Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist., 176 S.W.3d 746 (Tex.2005); Morath v. Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d 826, 2016 WL 2853868 (Tex.2016).

. Meno, 917 S.W.2d at 737-738; Neeley, 176 S.W.3d at 751, 794-798 (appeal after remand in Alanis, 107 S.W.3d at 563, 586); Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d at 841.

. Neeley, 176 S.W.3d at 754, 794-798.

. Act of May 12, 2006, 79th Leg., 3d C.S., ch. 5, 2006 Tex. Gen. Laws 45 [HB 1],

. Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d at 863.

. Id.

. Id.

. Act of May 12, 2006, 79th Leg., 3d C.S., ch. 5, § 1.04, 2006 Tex. Gen. Laws 45, 46-49 [HB I] (formerly Tex Educ. Code§ 42.2516(a), (a-D).

. Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d at 838.

. Act of May 12, 2006, 79th Leg., 3d C.S., ch. 5, § 1.04, 2006 Tex. Gen. Laws 45, 47 [HB 1] (formerly Tex. Educ. Code § 42.2516(b), (c)); see Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d at 838.

. Act of June 28, 2011, 82d Leg., 1st C.S., ch. 4, §§ 57.18, 32(a)(2), .34, 2011 Tex. Gen. Laws 5254, 5316, 5319 [SB 1]; Act of May 29, 2015, 84th Leg., R.S., ch. 448, § 6, 2015 Tex. Gen. Laws —, — [HB 7]; see Tex. Taxpayer & Student Fairness Coal, 490 S.W.3d at 838 ("[Additional State Aid for Tax Reduction under Section 42.2516] is presently only about 1% of total FSP funding, and is set to expire in 2017.”).

. Tex. Taxpayer & Student Fairness Coal., 490 S.W.3d at 838.

. Act of May 12, 2006, 79th Leg., 3d C.S., ch.'5, § 1.04, 2006 Tex. Gen. Laws 45, 48 [HB 1] (formerly Tex. Educ. Code § 42.2516(h)), repealed by Act of June 1, 2009, 81st Leg., R.S., ch. 1328, § 57, 2009 Tex. Gen. Laws 4173, 4194 [HB 3646],

. Act of May 12, 2006, 79th Leg., 3d C.S., ch. 5, § 1.04, 2006 Tex. Gen. Laws 45, 49 [HB 1] (formerly Tex. Educ. Code § 42.2516(f)), amended by Act of June 1, 2009, 81st Leg., R.S., ch. 1328, § 57, 2009 Tex. Gen. Laws 4173, 4194 [HB 3646] (redesignat-ed as Tex. Educ. Code § 42.2516(h)).

. Tex Educ. Code §§ 42.2513(b), .25161(c), .2518(d), .252(b), .2521(c), .2523(d), ,2524(j), .260(d).

. The five school districts are just west of Abilene in Coke, Nolan, Scurry, Sterling, and Taylor Counties. Their property value increases were due mostly to new wind farm operations.

. Two more school districts, Robert Lee Independent School District and Hermleigh Independent School District, intervened . to bring claims under a different statute, but the trial court ruled against them, and those claims are not on appeal.

. The Districts also alleged that the Commissioner’s interpretation of the Clawback Provision violated Carrollton-Farmers Branch Independent School District v. Edgewood Independent School District, 826 S.W.2d 489 (Tex. 1992), in that this interpretation exercised too much control over the local tax levy with *412 out the authorization of local voters, and thus violated Article VII, Section 3, and Article VIII, Section 1-e, of the Texas Constitution. The trial court observed that the Districts did not challenge the statute as being unconstitutional on its face, and, because the court found that the Commissioner violated the statute, concluded that it did not need to reach the constitutional issue. Nonetheless, the trial court later expressly addressed the Districts’ contentions that the Commissioner’s demand violated Articles VII § 3 and VIII § 1-e, framing the question as “whether the statute.is an unconstitutional exercise of control over . local discretion” and holding that, because the court "found that the Commissioner acted within his statutory authority in offsetting excess local revenues against state revenues that were due to the district, the statute does not interfere with local discretion." The Districts did not appeal.

. 447 S.W.3d 505, 513. (Tex.App.-Eastland 2014).

. 59 Tex. Sup.Ct. J. 7 (Oct. 9, 2015).

. Keenan v. Perry, 24 Tex. 253, 261 (1859).

. See Tex. S.J. Res. 14, § 4, 69th Leg., R.S., 1985 Tex. Gen. Laws 3355, 3357.

. Tex. Const, art. 5, § 8. See also Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75 (Tex.2000) ("By statute, district courts have ‘the jurisdiction provided by Article V, Section 8, of the Texas Constitution,’ tex. Gov't Code § 24.007, and ‘may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity.' ”); cf. In re Entergy Corp., 142 S.W.3d 316, 321 (Tex. 2004) ("An agency has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute.”).

.See, e.g., In re Office of Att’y Gen., 456 S.W.3d 153, 157 (Tex.2015) ("It is well settled that trial courts may review an administrative action only if a statute provides a right to judicial review, or the action adversely affects a vested property right or otherwise violates a constitutional right.”); Hous. Mun. Emps. Pension Sys. v. Ferrell, 248 S.W.3d 151, 158 (Tex.2007) ("There is no right to judicial review of an administrative order unless a statute explicitly provides that right or the order violates a constitutional right."); Stone v. Tex. Liquor Control Bd„ 417 S.W.2d 385, 385-386 (Tex. 1967) (“It is well settled that there is no right of appeal from an administrative order unless the statute provides for the same or unless the order violates a constitutional right or adversely affects a vested property right.”); City of Amarillo v. Hancock, 15 0 Tex. 231, 239 S.W.2d 788, 790 (1951) ("Judicial review of administrative action may be specifically provided, or specifically denied by the legislature[, but even when] the legislature specifically denies judicial review, decisions of an administrative body may be attacked in court if they violate some provision of the State or Federal Constitution.” (citations omitted)).

. The Districts argue that if Section 42.2516 gave the Commissioner the unreviewable authority he claims to interpret and apply the Clawback Provision, this statute would be an unconstitutionally broad delegation of legislative power in violation of the constitutional provision for separation of powers. See Tex. Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d 454, 467 (Tex.1997). But the FSP is very detailed, and the Commissioner asserts no authority to act inconsistently with the school funding system it establishes. The nondelegation doctrine is not implicated.

. 248 S.W.3d at 158.

. Id. at 160 (Brister, J., concurring) ("A different case might be presented if the plaintiffs alleged the board was clearly violating some provision of the statute. [The statute] gives the pension board complete discretion to interpret the statute, but not violate it.... But the plaintiffs argue only that the board is misinterpreting the statute, a charge we cannot adjudicate without interpreting the statute ourselves.”).

. 458 S.W.3d 1, 9 (Tex.2015) (‘‘[W]e will assume for purposes of our analysis that the ultra vires doctrine is an exception to [the statute]’s ban on judicial review.” (citing Ferrell, 248 S.W.3d at 160 (Brister, J., concurring))).

. Id. at 10-11.