# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00254-CV

**Michael Morath, in his Official Capacity as Texas Commissioner of Education; and Michael Berry, in his Official Capacity as Deputy Commissioner of Education, Appellants**

**v.**

**Progreso Independent School District, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-16-000005, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the trial court's denial of the plea to the jurisdiction filed by Michael Morath, in his official capacity as Texas Commissioner of Education, and Michael Berry, in his official capacity as Deputy Commissioner of Education (collectively, the Commissioner). Progreso Independent School District (PISD) sued the Commissioner for declaratory and injunctive relief, alleging that the Commissioner acted ultra vires in lowering PISD's accreditation rating and appointing a board of managers in place of PISD's board of trustees. The Commissioner argues that PISD's claims are barred by sovereign immunity. For the reasons explained below, we will reverse the trial court's order denying the Commissioner's plea to the jurisdiction and render judgment dismissing PISD's claims.

**Background**

In August 2013, the FBI arrested two Progreso ISD employees and one Progreso ISD board member for participation in a bribery and kickback scheme involving federal funds.[1] In the wake of these arrests, the Texas Education Agency (TEA) initiated a special accreditation investigation (SAI) of PISD's management, accounting, and reporting of federal and state funds. *See* Tex. Educ. Code § 39.057 (authorizing Commissioner to conduct special accreditation investigations).[2] The final report resulting from this SAI concluded, among other things, that PISD's board of trustees and executive leadership failed to perform their duty to govern, administer, and oversee the management of the district's funds; and that the board, executive leadership, and administration "knowingly allowed serious and pervasive violations of federal, state, and local requirements pertaining to financial management, including contracting and purchasing laws." The SAI report also determined that PISD lacked the auditing and financial controls needed to prevent the type of fraud that prompted the federal investigation, and recommended as sanctions that PISD's accreditation status be lowered. *See id.* § 39.057(d) (listing actions Commissioner may take as result of SAI). In response to the SAI final report, the Commissioner appointed a management team

---

[1] The employees and board member later pleaded guilty to, and were sentenced to prison terms for, theft from an organization or local government that receives federal funds. *See* 18 U.S.C. § 666(a)(l)(A) (theft or bribery concerning programs receiving federal funds); *see also, e.g.*, D.O.J. News Release, *Multiple Sentences Handed Down in Progreso Bribery Scheme*, 2014 WL 12649558 (D.O.J. Aug. 11, 2014).

[2] Relevant sections of the Education Code were amended and partially recodified in 2017. *See* Act of May 29, 2017, 85th Leg., R.S., ch. 807, §§ 6–23, __ Tex. Gen. Laws __ (codified in Tex. Educ. Code §§ 39.001–.301). Our references to the Education Code and Title 19 of the Texas Administrative Code, however, are to provisions in effect as of December 30, 2015, the date the Commissioner took the final actions at issue in this suit.

consisting of two conservators to direct the board of directors in its oversight and governance of the district.

A few weeks after TEA released the final report from the SAI conducted in the wake of the FBI indictments, the Commissioner initiated a second SAI to address violations of statutes and regulations regarding financial and internal-control procedures that had been uncovered by the first SAI. The final report from this second SAI, released in late August 2015, recommended that the Commissioner lower PISD's 2014–2015 accreditation rating and appoint a board of managers "because the nature of the violations uncovered indicate a widespread and systemic breakdown in the district's governance that has caused substantial harm to the public interest." Soon thereafter the Commissioner notified PISD that based on the district's "deficiencies in financial management and legal compliance" as identified in the second final report and the management team's reports, he was lowering the district's accreditation status to "accredited-warned." The Commissioner also notified PISD that he was imposing a board of managers—i.e., displacing the board of trustees—and appointing a new superintendent based on the lowered accreditation status, the findings in the second SAI report, and the fact that a management team had been in place for at least two consecutive years. The Commissioner cited as authority for his action sections 39.052(d) and 39.057(d) of the Education Code and sections 97.1055, 97.1057, and 97.1059 of the TEA's administrative rules as support for his determinations. *See id.* §§ 39.052(d) (authorizing lowering of accreditation status based on district's performance), 39.057(d) (listing actions Commissioner may take in response to SAI); 19 Tex. Admin. Code §§ 97.1055 (TEA, Accreditation Status), 39.1057 (TEA, Interventions

3

and Sanctions; Lowered Rating or Accreditation Status), 39.059 (TEA, Standards for All Accreditation Sanction Determinations).

Throughout its oversight of the district, which began in January 2014, the management team issued quarterly reports to the Commissioner regarding the district's governance and finance. In an early quarterly report, the management team recommended that the Commissioner appoint a board of managers to replace the PISD board because, even though two new PISD board members had been elected in the May 2014 election, it did not appear to the management team that the board would be able to move forward in a positive manner. In subsequent quarterly reports, the management team noted improvement, but maintained its recommendation for continued oversight and guidance through August 2015, namely due to board-member actions regarding the district's finances. In its sixth and, based on the record here, final quarterly report (issued shortly before the final report for the second SAI), the management team suggested that PISD's board remained dysfunctional, criticizing the board's handling of the hiring of a new superintendent, the award of a roofing contract, and an employee-compensation matter. Based on its "concerns over district's finances and the board's inattention to district finances," the management team recommended "that a board of managers be put in place as soon as possible."

PISD sought both formal and informal review of the Commissioner's decision to lower its accreditation rating and appoint a board of managers to replace its board of trustees. PISD argued in its appeal to the Commissioner that none of the provisions cited by the Commissioner—sections 39.052(d) and 39.057(d) of the Education Code and sections 97.1055, 97.1057, and 97.1059 of the TEA's administrative rules—authorized the Commissioner to lower the

4

district's accreditation record. The district also emphasized that the Commissioner had not identified a single violation of any Education Code standards that had occurred during the 2014–2015 school year for which its accreditation status had been lowered. On review, the Commissioner declined to change his decisions and, on the same day, lowered the district's accreditation status and appointed the board of managers.

After the Commissioner appointed the board of managers, but before the appointed board of managers could take their oaths of office, PISD filed the underlying declaratory action in Travis County District Court, asserting that the Commissioner and Deputy Commissioner acted ultra vires in lowering PISD'S accreditation rating and appointing the board of managers. In support of its claims, PISD asserted that the statutory and regulatory provisions the Commissioner relied on did not authorize him to lower PISD's rating and impose a board of managers. PISD also argued that there was no evidence of poor governance of the district following the first SAI. As relief, PISD sought declarations that the Commissioner acted outside his authority and temporary and permanent injunctive relief prohibiting the Commissioner from lowering PISD's accreditation rating and appointing a board of managers.

The Commissioner filed a plea to the jurisdiction in response to PISD's suit, arguing that the trial court lacked jurisdiction over PISD's appeal because lowering accreditation status and appointing a board of managers are acts that are within the Commissioner's statutory authority. After a hearing, the trial court denied the Commissioner's plea to the jurisdiction. It is from this order denying his plea that the Commissioner now appeals. *See* Tex. Civ. Prac. & Rem. Code

5

§ 51.014(a)(8) (authorizing appeal from trial court's denial of plea to jurisdiction asserted by governmental body).

**Discussion**

The Commissioner challenges the trial court's denial of his plea to the jurisdiction in four issues on appeal: (1) an ultra vires claim cannot be used for judicial review, cannot operate retroactively, does not apply when a determination is made final by statute or rule, and cannot be based on mere procedural defects; (2) the Commissioner did not act ultra vires because the Education Code expressly authorizes him to lower accreditation status and appoint a board of managers; (3) the facts alleged by the district do not constitute ultra vires acts; and (4) the temporary injunction was an abuse of the district court's discretion.

Under the ultra vires doctrine, sovereign immunity does not bar a suit against a government officer to restrain acts that are beyond the officer's lawful authority. *See, e.g.*, *Houston Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 161 (Tex. 2016). There are four requirements for such a suit. *City of Austin v. Utility Assocs., Inc.*, 517 S.W.3d 300, 308 (Tex. App.—Austin 2017, pet. denied). First, the suit must formally be pleaded against a governmental official in his or her official capacity. *Id.* (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009)). Second, the "suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* The third requirement, which relates to the nature and effect of the remedy sought, requires that the remedy must be prospective in nature—i.e., compelling legal compliance going forward, as opposed to awarding retrospective relief to remedy

6

past violations. *Id.* at 309. The fourth requirement, which is closely related to the third, is that an ultra vires claim otherwise within the trial court's jurisdiction may independently implicate immunity if it would have the effect of establishing a right to relief against the government for which the Legislature has not waived immunity. *Id.* (citing *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388–89 (Tex. 2011) (title as against State); *City of Hous. v. Williams*, 216 S.W.3d 827, 828–29 (Tex. 2007) (per curiam) (retrospective monetary relief)).

There is no dispute that PISD's pleadings comply with the first requirement. But even assuming without deciding that PISD met the second requirement by alleging facts that would constitute conduct that is ultra vires of the Commissioner's authority, PISD's ultra vires claims run afoul of the third and fourth requirements because the claims complain of alleged past ultra vires conduct and seek relief that is retrospective in nature. PISD seeks permanent injunctions prohibiting the Commissioner "from lowering the PISD accreditation status for the 2014–2015 school year" and "from appointing a board of managers for PISD." But the Commissioner has already lowered PISD's accreditation status and has already appointed a board of managers—in fact, he did so on the same day that he denied PISD's appeal of his determinations. Thus, to grant PISD the relief it seeks—its prior, higher accreditation status and no board of managers—would require the Court to reach back in time to undo the past executive action of the TEA, presumably by ordering the Commissioner to change his prior final and unappealable decisions to lower the accreditation status and appoint the board of managers, and to reinstate PISD's accreditation status. We have previously held that such an ultra vires claim—i.e., one that requests relief requiring the undoing of an already-

7

final administrative act of the Commissioner—is jurisdictionally defective. *See Texas Educ. Agency v. American Youthworks, Inc.*, 496 S.W.3d 244, 265–57 (Tex. App.—Austin 2016, pet. granted).

The fact that PISD is challenging final and unappealable decisions is another, related immunity bar to its claims. *See Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407, 412–13 (Tex. 2016). In *Sterling City* the supreme court dismissed for lack of jurisdiction ultra vires claims that complained of decisions by the Commissioner because the Legislature had made the complained-of decisions final and unappealable—i.e., beyond judicial review. *See id.* Here, similar to the provision at issue in *Sterling City*, Education Code section 39.151 specifies that the Commissioner's decisions on accountability ratings are final and may not be appealed. *See* Tex. Educ. Code § 39.151(d)–(e). Likewise, TEA rules stipulate that the Commissioner's final orders following either informal or formal review are final and unappealable. *See* 19 Tex. Admin. Code §§ 157.1123 (TEA, Informal Review) (final report following "informal review is final and may not be appealed"), 157.1136 (TEA, Final Order & Appeal) (final order issued following "formal review is final and may not be appealed"); *see also* Tex. Educ. Code § 39.058 (requiring TEA to offer informal review before issuing SAI final report). As the plurality opinion in *Sterling City* noted, the Texas Supreme Court "has never allowed a challenge to an executive decision made final by statute," and it would not "absent a 'manifest,' 'conspicuous and irreconcilable' conflict between the action and the statutory authority asserted by the executive." 499 S.W.3d at 412–13 (citing *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 9 (Tex. 2015)).

We sustain the Commissioner's first issue. Having done so, we need not address his remaining issues.

## Conclusion

We reverse the district court's order denying the Commissioner's plea to the jurisdiction and render judgment dismissing PISD's claims.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Reversed and Rendered

Filed:   December 7, 2017