# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-20-00025-CV

---

**The Texas Education Agency; Mike Morath, Commissioner of Education in his Official Capacity; and Doris Delaney, in her Official Capacity, Appellants**

**v.**

**Houston Independent School District, Appellee**

---

**FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY, NO. D-1-GN-19-003695, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellee Houston Independent School District (HISD) filed suit for injunctive and declaratory relief against Appellants the Texas Education Agency (TEA), the Commissioner of Education (the Commissioner), and Conservator Doris Delaney (collectively, Appellants). Appellants filed a plea to the jurisdiction contending that the suit is barred by sovereign immunity, and the district court implicitly denied the plea by granting a temporary injunction in favor of HISD. For the following reasons, we affirm the district court's order granting the temporary injunction.

## BACKGROUND

Beginning in 2016 and continuing through 2019, Appellants took and threatened to take various actions against HISD under Chapters 39 and 39A of the Texas Education Code. *See* Tex. Educ. Code §§ 39.001–.413 (Chapter 39, "Public School System Accountability"), 39A.001–.907 (Chapter 39A, "Accountability Interventions and Sanctions"). These actions, which we discuss in more detail below, included appointing Delaney as a conservator for HISD, suspending HISD's search for a superintendent, initiating a Special Accreditation Investigation (SAI) against HISD based on alleged violations of the Texas Open Meetings Act and other laws, and threatening to lower HISD's accreditation status and replace HISD's elected Board of Trustees with an appointed board of managers.

In 2019, HISD filed suit against Appellants, seeking declaratory and injunctive relief. HISD sought declarations that: (1) the Commissioner has no legal authority to replace the elected Board of Trustees with a board of managers; (2) Delaney has no legal authority to direct HISD's Board of Trustees and administration to suspend the superintendent search; (3) the Commissioner has no legal authority to grant Delaney authority to oversee the governance of the district; and (4) the Commissioner has no legal authority to impose any sanctions or interventions on HISD based on the SAI. HISD also challenged the validity and applicability of TEA Rule 97.1061(g), which authorizes the Commissioner to order the appointment of a board of managers to a school district if a campus within the district is assigned an "unacceptable" rating for a fifth consecutive year. *See* 19 Tex. Admin. Code § 97.1061(g) (2020) (TEA, Interventions and Sanctions for Campuses). HISD further sought a temporary injunction prohibiting: (1) the Commissioner from appointing a board of managers, (2) Delaney from acting outside her lawful authority, and (3) the Commissioner from imposing any sanctions or interventions on HISD

based on the SAI.  Finally, HISD asked the district court to deny any attempt by Appellants to supersede the injunction on appeal.

Appellants filed a plea to the jurisdiction, asserting that HISD failed to plead any valid ultra vires claims that would waive Appellants' sovereign immunity from suit.  Following a hearing, the district court granted the temporary injunction, prohibiting: (1) the Commissioner from appointing a board of managers to oversee the operations of HISD, (2) Delaney from acting outside her lawful authority, and (3) the Commissioner from imposing any sanctions or interventions on HISD based on the SAI.  This interlocutory appeal followed.[1]

**Plea to the jurisdiction**

In their first issue, Appellants assert that the district court erred in denying their plea to the jurisdiction because sovereign immunity bars HISD's claims.  According to Appellants, "HISD tried to plead ultra vires claims, but these claims lack merit as a matter of law, and some of the claims seek impermissible retrospective relief or are barred by statutory finality provisions."

### Standard of review

"Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction."  *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004).  "The trial court must determine at its earliest

---

[1] The district court also denied the Commissioner the right to supersede the temporary injunction during the pendency of this appeal.  In this Court, the Commissioner filed a Rule 24.4 motion challenging that decision, *see* Tex. R. App. P. 24.4, and HISD filed a Rule 29.3 motion requiring Appellants to comply with the temporary injunction while the appeal remains pending, *see id*. R. 29.3.  This Court granted both motions.  *See Texas Educ. Agency v. Houston Indep. Sch. Dist.*, 609 S.W.3d 569, 578 (Tex. App.—Austin 2020, order [mand. pending]) (per curiam).

opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed." *Id*. Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015). "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent" and "consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do." *Miranda*, 133 S.W.3d at 226–27. Mirroring the standard of review in summary judgments, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in its favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (2009).

Sovereign immunity "does not prohibit suit against a state official if the official's actions are ultra vires." *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018) (citing *Heinrich*, 284 S.W.3d at 372). "To state an ultra vires claim, the plaintiff must allege and prove that the named officials acted without legal authority or failed to perform a ministerial act." *Id*. (citing *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017)). "The fact that the official has some limited discretion to act under the applicable law does not preclude an ultra vires claim if the claimant alleges that the official exceeded the bounds of that authority, or the conduct conflicts with the law itself." *Id*. (citing *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016)). "'Ultra vires claims depend on the scope of the state official's authority,' not the quality of the official's decisions." *Honors Acad., Inc.*, 555 S.W.3d at 68 (citing *Hall*, 508 S.W.3d at 234). "Thus, it is not an ultra vires act for an official to make an erroneous decision within the authority granted." *Id*. Only when the decision is unauthorized does an official act ultra vires. *Hall*, 508 S.W.3d at 243.

4

*Claims involving Delaney*

We begin with HISD's claims involving Delaney. In 2016, the Commissioner sent a letter to HISD officials notifying them that the Commissioner was appointing Delaney as a conservator to HISD "to ensure and oversee district-level support for Kashmere High School ('campus') and implementation of the targeted improvement plan" for that campus, which had received unacceptable performance ratings for several years. The letter indicated that Delaney's role as conservator would include: "[e]nsuring that a comprehensive needs assessment of the campus is performed"; "[e]nsuring that an evaluation of the efficacy of the district's resource allocation to the campus for school years 2015–2016 and 2016–2017 is performed"; and "[o]verseeing instructional delivery at the campus for school year 2016–2017."

The Commissioner continued Delaney's appointment as a conservator for Kashmere High School in 2017, 2018, and 2019. However, on March 25, 2019, the Commissioner sent HISD officials a letter purporting to "clarify" Delaney's powers and duties, including: "[e]nsuring and overseeing district-level support to low-performing campuses within the district"; "[e]nsuring and overseeing the implementation of the district's turnaround efforts to support its low-performing campuses"; "[a]ttending board meetings and overseeing the governance of the district"; and "[s]ubmitting monthly reports, including any special reports requested by the Texas Education Agency." On the same date that the Commissioner notified HISD of Delaney's expanded authority, Delaney sent the following "Conservator Directive" to HISD officials, ordering HISD to temporarily suspend its "Superintendent search activities":

> Pursuant to Texas Education Code § 39A.003(c)(1), I am directing the Houston Independent School District Board of Trustees and the administration of the Houston ISD to immediately suspend its Superintendent search activities until the

5

Agency has completed its special accreditation investigation (SAI # INV2019-10-034). I am directing the Houston ISD Board of Trustees to take no further action regarding the selection of a new Superintendent until the Board receives written authorization from the Conservator to resume the search activities.

HISD acknowledges that the Commissioner had authority to appoint Delaney as a campus-level conservator for Kashmere High School. However, in its second and third ultra vires claims, HISD alleges that the Commissioner did not have authority to appoint Delaney as a district-level conservator and that Delaney, consequently, did not have authority to suspend HISD's superintendent search. We agree.

Section 39A.002 of the Education Code provides that the Commissioner may appoint a conservator to oversee the operations of a school district if the district is "subject to commissioner action under Section 39A.001." Tex. Educ. Code § 39A.002(7). A school district is "subject to commissioner action under Section 39A.001" if the *district* fails to satisfy: (a) certain accreditation criteria, (b) academic performance standards, or (c) any financial accountability standard as determined by commissioner rule. *Id*. § 39A.001(1). It is undisputed that HISD did not fail to satisfy any of those standards. Accordingly, the Commissioner lacked authority under Section 39A.001 to appoint Delaney to oversee the operations of the entire school district.

Nevertheless, Appellants contend that the Commissioner appointed Delaney not under Section 39A.001 but under Sections 39A.101 and 39A.102, which allow for the appointment of a campus-level conservator if a campus within a school district has been identified as unacceptable for two consecutive school years. *See id*. §§ 39A.101, .102. However, the Commissioner may appoint a campus-level conservator to "ensure and oversee district-level support to low-performing campuses and the implementation of the updated

6

targeted improvement plan" for those campuses. *See id.* § 39A.102(b). There is no statute that grants a conservator appointed under Sections 39A.101 and 39A.102 the authority to oversee the governance of an entire school district.

Similarly, there is no statute that gives a campus-level conservator the authority to suspend a school district's superintendent search. Appellants assert that Delaney has authority to suspend the search under Section 39A.003, which provides that a conservator "may direct an action to be taken by the principal of a campus, the superintendent of the school district, or the board of trustees of the district." *Id.* § 39A.003(c)(1). However, that section applies to district-level conservators appointed under Section 39A.001, and as indicated above, the Commissioner did not have authority to appoint a conservator under that section.

*Prospective versus retrospective relief*

Appellants also assert that the district court should have dismissed HISD's second and third claims involving Conservator Delaney because those allegations "challenge past official conduct" and seek retrospective rather than prospective relief. *See Morath v. Progreso Indep. Sch. Dist.*, No. 03-16-00254-CV, 2017 WL 6273192, at *3 (Tex. App.—Austin Dec. 7, 2017, pet. denied) (mem. op.) (explaining that one jurisdictional requirement for maintaining ultra vires suit is that "the remedy must be prospective in nature—i.e., compelling legal compliance going forward, as opposed to awarding retrospective relief to remedy past violations"). We disagree.

Sovereign immunity does not bar ultra vires suits that challenge past conduct by government officials, so long as the relief requested seeks to bring those officials into prospective compliance with statutory or constitutional provisions. *See, e.g., Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345, 349-55 (Tex. 2019) (challenging decision

7

by government official to enter into lease agreement); *Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 161, 164, 169 (challenging determinations by government officials that certain railroads owed drainage charges); *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015) (challenging government officials' "clear and extended refusal" to accept responsibility for repayment of phone company's relocation costs); *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 393–94 (Tex. 2011) (challenging government's taking control of streambed based on determination by government officials that streambed was navigable; explaining that "the remedy of compelling return of land illegally held is prospective in nature"); *Heinrich*, 284 S.W.3d at 369, 376–77 (challenging government officials' decision to reduce survivor benefits to widow of deceased police officer). In this case, HISD, in its second and third ultra vires claims, is seeking injunctive relief to prohibit the Commissioner from directing Delaney to oversee the governance of HISD and to prohibit Delaney from directing HISD to suspend its search for a superintendent. Although these actions have already occurred, HISD is seeking to prevent the Commissioner and Conservator Delaney from taking any further unauthorized action against HISD and to comply with the law moving forward. Thus, the requested relief is prospective rather than retrospective in nature and is not barred by sovereign immunity. *See Heinrich*, 284 S.W.3d at 376–77.

To the extent that Appellants rely on this Court's opinion in *Progreso*, that case involved a school district's attempts to undo already-final decisions by the Commissioner to lower the district's accreditation status for a prior school year and to appoint a board of managers to oversee the district. 2017 WL 6273192, at *3. In this case, on the other hand, HISD filed suit and obtained a temporary injunction before the Commissioner issued his final decision regarding the district's accreditation status and the appointment of a board of managers. As for the actions

8

that had already occurred prior to the injunction, they are distinguishable from the actions in *Progreso* that could not be undone. The Commissioner appointed Delaney to be a campus-level conservator in 2016, and that appointment has been continued every year since then. We see no legal impediment to allowing Delaney to remain in her lawful role as a campus-level conservator, minus the expanded powers and duties that the Commissioner unlawfully assigned to her in 2019. Similarly, Delaney suspended but did not terminate HISD's superintendent search. This action too can be undone. Injunctive relief would require her simply to lift the suspension and allow the search to proceed. As HISD observes, to hold that prospective injunctive relief is not available under these circumstances would "send[] the Commissioner the clear message that he can—for any reason or no reason—appoint a conservator to oversee the operations of any school district in Texas and simply ignore the Legislature's requirements in Section 39A.001 because his unlawful appointment would be unreviewable by any Texas court." Accordingly, we conclude that these claims are not barred by sovereign immunity.

### Claims involving the appointment of a board of managers and the imposition of sanctions against HISD

In January 2019, the Commissioner launched a SAI into HISD based on complaints that members of HISD's Board of Trustees "may have violated The Open Meetings Act by deliberating district business prior to a regularly scheduled board meeting." In March 2019, the Commissioner amended the SAI to add a complaint that HISD's Board of Trustees "may have violated the contract procurement process, competitive bidding, awarding, and management of contracts." Following the investigation, the Commissioner decided to lower HISD's accreditation status to "accredited-warned" and appoint a board of managers to HISD "to exercise the powers and duties of the district's board of trustees." In HISD's first and fourth

9

ultra vires claims, it alleges that the Commissioner has no legal authority to appoint a board of managers to HISD or impose any sanctions or interventions against the district based on the SAI. We agree.

First, appellants contend that the Commissioner has authority to appoint a board of managers based on Section 39A.906 of the Education Code, which provides that if a campus within the district receives an unacceptable performance rating for the 2013–2014, 2014–2015, and 2015–2016 school years, and if the campus further receives "an unacceptable performance rating for the 2016–2017 and 2017–2018 school years, the commissioner shall apply the interventions and sanctions authorized by Section 39A.111." *See* Tex. Educ. Code § 39A.906(a), (b). Section 39A.111, in turn, provides that "[i]f a campus is considered to have an unacceptable performance rating for three consecutive school years after the campus is ordered to submit a campus turnaround plan under Section 39A.101," the Commissioner shall order either the appointment of a board of managers or closure of the campus. *Id*. § 39A.111.

The campus in question was Wheatley High School, which received an unacceptable performance rating for the 2013–2014, 2014–2015, 2015–2016, and 2016-2017 school years. However, it is undisputed that Wheatley received no rating for the 2017–2018 school year.[2] Thus, according to the plain language of the statute, Section 39A.906 does not give the Commissioner authority to appoint a board of managers.[3] Additionally, it is undisputed that

[2] In 2018, the Commissioner decided not to assign accountability ratings to certain schools that may have been affected by Hurricane Harvey.

[3] Appellants contend that without the so-called "Harvey Provision," Wheatley would have received an unacceptable academic performance rating for the 2017–2018 school year. Thus, appellants urge that we should look beyond the plain language of the statute to the legislative intent, which appellants claim is focused not on the particular years in which a campus received unacceptable performance ratings but on whether those years were "consecutive." However, "[w]e must enforce the statute 'as written' and 'refrain from rewriting

10

Wheatley High School was never ordered to submit a campus turnaround plan, which is a statutory prerequisite for appointing a board of managers based on a campus receiving three consecutive years of unacceptable performance ratings. *See id*. § 39A.111.

Next, appellants assert that the Commissioner has authority to appoint a board of managers under Section 39A.006, which provides that "[i]f for two consecutive school years, including the current school year, a school district has had a conservator or management team assigned, the commissioner may appoint a board of managers to exercise the powers and duties of the board of trustees of the district." *Id*. § 39A.006(b). According to the Commissioner, because Delaney served as a conservator for more than two consecutive school years, the Commissioner had authority to appoint a board of managers to the district. However, as explained above, Delaney was assigned in 2016 specifically to Kashmere High School, not to the entire school district. Section 39A.006, which is found in the same subchapter as the previously discussed Sections 39A.001 and 39A.003, applies to district-level conservators, not campus-level conservators such as Delaney. Accordingly, Section 39A.006 does not give the Commissioner the authority to appoint a board of managers in this case.

Finally, appellants assert that the Commissioner is authorized to appoint a board of managers and impose sanctions and interventions against the district (including the appointment of Delaney as a district-wide conservator) under Section 39.057(d), which provides that "[b]ased on the results of a special accreditation investigation, the commissioner may:

---

text that lawmakers chose.'" *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014) (plurality op.) (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)); *King v. Paxton*, 576 S.W.3d 881, 889 (Tex. App.—Austin 2019, pet. denied). In Section 39A.906(b), the legislature chose to require that a campus receive an unacceptable performance rating for both the "2016–2017 and 2017–2018 school years" before a board of managers could be appointed. That did not occur here.

(1) take appropriate action under Chapter 39A; (2) lower the school district's accreditation status or a district's or campus's accountability rating; or (3) take action under both Subdivisions (1) and (2)." *Id*. § 39.057(d). We disagree.

Section 39.057(d) authorizes the Commissioner to take "appropriate" action under Chapter 39A. Thus, we must look to that chapter to determine what actions are appropriate. The dissent relies on Section 39A.001, which provides that "[t]he commissioner shall take any of the actions authorized by this subchapter to the extent the commissioner determines necessary if . . . the commissioner considers the action to be appropriate on the basis of a special accreditation investigation under Section 39.057." *Id*. § 39.001(2). However, for the appointment of a board of managers to be "authorized by this subchapter," the requirements of Section 39A.004 must be satisfied. That section provides for the appointment of a board of managers only if the district meets at least one of three prerequisites: (1) a current accreditation status of accredited-warned or accredited-probation, (2) a failure to satisfy any standard under Section 39.054(e) (relating to annual performance reviews), or (3) a failure to satisfy financial accountability standards as determined by commissioner rule. *Id*. § 39A.004. None of those prerequisites has been satisfied in this case. Although the Commissioner has threatened to lower HISD's accreditation status to "accredited-warned," based on the results of the SAI, that action has not yet occurred.

Moreover, we agree with HISD that the SAI in this case cannot be used to impose sanctions on HISD, including the lowering of HISD's accreditation status, the appointment of a board of managers, and the appointment of Delaney as a district-wide conservator. Section 39.058 requires the adoption of "written procedures for conducting special accreditation investigations," and agency staff "must follow the procedures in conducting the special accreditation investigation." *Id*. § 39.058(a). One such procedure is that "[b]efore issuing a

report with its final findings, the agency must provide a person or entity the agency finds has violated a law, rule, or policy an opportunity for an informal review by the commissioner or a designated hearing examiner." *Id*. § 39.058(b). The informal review in this case was neither conducted by the Commissioner, nor did he designate a hearing examiner to conduct this informal review. Instead, it was conducted by Dr. Jeff Cottrill, Deputy Commissioner of Governance and Accountability for TEA. However, the statute does not provide for an informal review by the Commissioner's delegate or other representative. The informal review must be by the "commissioner or a designated hearing examiner." *Id*. The Education Code defines "Commissioner" as "the commissioner of education." *Id*. § 5.001(3). Cottrill is not the commissioner of education.

Nor is Cottrill a "designated hearing examiner." The Education Code does not define the term "designated hearing examiner." However, the term "hearing examiner" is considered synonymous with the term "administrative law judge." *See Administrative Law Judge*, *Black's Law Dictionary* (11th ed. 2019) ("An official who presides at an administrative hearing and who has the power to administer oaths, take testimony, rule on questions of evidence, and make factual and legal determinations." . . . "Also termed hearing examiner; hearing officer; trial examiner"); *see also Slama v. Landmann Jungman Hosp.*, 654 N.W.2d 826, 828 (S.D. 2002) ("The term 'hearing examiner' has a plain meaning identical to the term "administrative law judge."). Moreover, hearing examiners, in order to be certified to conduct hearings, must be licensed to practice law in the State of Texas. *See* 19 Tex. Admin. Code § 157.41 (2020) (TEA, Certification Criteria for Independent Hearing Examiners); *cf*. Tex. Educ. Code § 21.252(a) (providing that hearing examiner certified under separate chapter of Education

13

Code "must be licensed to practice law in this state"). Cottrill is not a lawyer and thus is not licensed to practice law.

Additionally, HISD claims that Cottrill "provided no hearing at which the evidence regarding TEA's preliminary report could [be] examined" and that "TEA has refused to disclose much of the evidence it claims it has to support the allegations in its preliminary and final reports." The dissent believes that no such hearing is required. However, by providing that an informal review must be conducted by either the Commissioner or a "designated hearing examiner," we conclude that the statute requires some form of hearing in which HISD can examine and challenge the evidence against it, particularly where, as here, Appellants allege that HISD's Board of Trustees should be removed for violating the law. *Cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950))). Taking as true HISD's allegations that the SAI did not comply with the requirements of Section 39.058, we conclude that HISD has alleged a viable ultra vires claim regarding the Commissioner's use of the SAI to impose sanctions on HISD and thus the claim is not barred by sovereign immunity.

*Statutory finality provisions*

Appellants further assert that the Commissioner's decisions to lower HISD's accreditation status and appoint a board of managers are "insulated" from judicial review because of what appellants characterize as "statutory finality provisions," i.e., laws passed by the legislature "to limit judicial review of executive actions." *See Morath v. Sterling City Indep. Sch. Dist.*, 499 S.W.3d 407, 412 (Tex. 2016) (plurality op.). Appellants cite to three provisions:

14

Section 157.1123(f) of the Administrative Code, Section 39.151 of the Education Code, and Section 39A.116 of the Education Code.

Section 157.1123, which applies to SAIs, provides that "[a] final report, assignment, determination, or decision issued following an informal review is final and may not be appealed, except as provided by law or rule." 19 Texas Admin. Code § 157.1123(f) (2020) (TEA, Informal Review). However, as HISD observes, this provision is an agency rule, not a statute passed by the legislature. Although the legislature has authority to limit the scope of judicial review of agency actions, *see Sterling City*, 499 S.W.3d at 412, we cannot conclude that an administrative agency has that same authority over the judiciary, *see In re State Bd. for Educator Certification*, 452 S.W.3d 802, 808–09 (Tex. 2014) (orig. proceeding) (discussing importance of separation of powers).

As for Sections 39.151 and 39A.116 of the Education Code, neither of those statutes applies to the Commissioner's decisions in this case. Section 39.151 provides procedures for challenging Commissioner decisions "relating to an academic or financial accountability rating," Tex. Educ. Code § 39.151(a), and provides that such decisions, once final, may not be challenged or appealed, *id*. § 39.151(d), (e). The section does not apply to the Commissioner's decisions regarding a district's accreditation status, which is governed by Section 39.052. Section 39A.116 applies to the subchapter relating to campus turnaround plans and provides that "[a] decision by the commissioner under this subchapter is final and may not be appealed." *Id*. § 39A.116. HISD is not challenging any decision by the Commissioner relating to campus turnaround plans. Thus, section 39A.116 is also inapplicable here.

15

*Rule challenge*

TEA Rule 97.1061(g) provides, "If a campus is assigned an unacceptable rating . . . for a fifth consecutive year, the commissioner shall order the appointment of a board of managers to govern the district or closure of the campus."  19 Tex. Admin. Code § 97.1061(g).  HISD alleges that the threatened application of this rule would impose "unlawful sanctions and interventions" on the district because the rule "conflicts with the limitations the Texas Legislature placed on the Commissioner in Texas Education Code §§ 39A.111, 39A.906."

The dissent concludes that the district court did not have jurisdiction over HISD's rule challenge because "the challenged rule and its threatened application do not interfere with or impair any legal rights or privileges of HISD as a matter of law."  *See* Tex. Gov't Code § 2001.038(a) (providing that district court has jurisdiction to consider rule challenge if "the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff").  This claim was not made by Appellants in their plea to the jurisdiction and thus HISD did not have an opportunity to address it in the court below.  Nevertheless, to the extent it implicates the district court's subject-matter jurisdiction and may be raised for the first time on appeal, we find it to be without merit.

Section 39A.111 requires the Commissioner to appoint a board of managers to govern a school district if a campus within the district "is considered to have an unacceptable performance rating for three consecutive school years after the campus is ordered to submit a campus turnaround plan."  Tex. Educ. Code § 39A.111.  This provision applies only "to the academic performance ratings issued to public school campuses beginning with the 2015–2016 school year."  Act of May 31, 2015, 84th Leg., R.S., ch. 1046, § 19, 2015 Tex. Gen. Laws 3649, 3662.  For a campus turnaround plan to be ordered, the campus must be "identified as

16

unacceptable for two consecutive school years." Tex. Educ. Code. 39A.101. Thus, under Section 39A.111, the earliest that the Commissioner could appoint a board of managers to govern a school district would have been after the 2019–2020 school year, assuming that: (1) a campus received an unacceptable performance rating in the 2015–2016 and 2016–2017 school years, (2) a campus turnaround plan was immediately ordered, and (3) the campus received unacceptable performance ratings the following three consecutive school years (2017–2018, 2018–2019, and 2019–2020). When the above requirements are not satisfied (for example, if a campus received unacceptable performance ratings for consecutive school years that began prior to 2015 or only two consecutive school years after 2015), Section 39A.906 of the Education Code provides for less severe "transitional" interventions and sanctions to be applied to the underperforming *campus* rather than the entire school district. *See id*. § 39A.906.

HISD alleges that the requirements under Section 39A.111 for a board of managers to be appointed to the entire district were not satisfied in this case. Thus, according to HISD, Rule 97.1061(g), to the extent that it allowed the Commissioner to appoint a board of managers to HISD, circumvents the above statutory requirements, thereby subjecting the district to unlawful sanctions and interventions and infringing on its legal rights. We conclude that these allegations are sufficient to confer jurisdiction on the district court to consider the merits of HISD's rule challenge. *See Miranda*, 133 S.W.3d at 226 (explaining that in jurisdictional inquiries, courts are to "construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent"); *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 743-45 (Tex. App.—Austin 2014, pet. dism'd) (discussing how "legal right or privilege" requirement in section 2001.038(a) is construed broadly and in manner similar to standing requirement); *see also Hegar v. Ryan, LLC*, No. 03-13-00400-CV, 2015 WL 3393917, at *6 (Tex. App.—Austin

17

May 20, 2015, no pet.) (mem. op.) (rejecting assertion that plaintiffs failed to allege or prove that challenged rule threatened its legal rights or privileges).

We overrule Appellants' first issue.

**Temporary injunction**

In their second issue, Appellants assert that because the district court lacked jurisdiction over HISD's claims, it abused its discretion in granting a temporary injunction. According to Appellants, "HISD failed to demonstrate a cause of action against any defendant, it had no right of relief, and the actions HISD attempted to enjoin would help HISD achieve its mission of serving students, not cause the district any harm."

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Thus, "the applicant is not required to establish that [it] will prevail on final trial, the only question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial on the merits." *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (internal citations omitted). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204.

"Whether to grant or deny a temporary injunction is within the trial court's sound discretion." *Id*. "A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion." *Id*. A trial court abuses its discretion when it acts arbitrarily, unreasonably, and without reference to guiding rules or principles, or misapplies the law to the established facts of the case. *See Pressley v. Casar*, 567 S.W.3d 327, 333 (Tex. 2019); *Walker v.*

18

*Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

Our analysis of the jurisdictional inquiry is dispositive of the first two elements. As explained above, HISD has alleged viable ultra vires claims against Appellants and has a probable right to the relief sought because Appellants' proposed actions are not authorized by the Education Code. Furthermore, HISD will suffer a probable, imminent, and irreparable injury in the interim if Appellants take those actions. Appellants argue that there is no injury because HISD is "struggling" under the status quo and the Commissioner's actions will "assist" HISD in fulfilling its duties. However, the injury to HISD stems from the loss of local control over the governance of the district. The elected Board of Trustees "have the exclusive power and duty to govern and oversee the management of the public schools of the district." Tex. Educ. Code § 11.151(b). "All powers and duties not specifically delegated by statute to the agency or to the State Board of Education are reserved for the trustees, and the agency may not substitute its judgment for the lawful exercise of those powers and duties by the trustees." *Id*. Absent an injunction, the Commissioner would be able to immediately and irreparably remove the elected Board of Trustees and appoint a board of managers to govern the district. The Commissioner also would be able to immediately lower HISD's accreditation status, and Delaney would be able to continue the suspension of HISD's search for a superintendent, which would cause further injury to HISD. Accordingly, the third element for injunctive relief is also satisfied here. On this record, we cannot conclude that the district court abused its discretion in granting the temporary injunction.

We overrule Appellants' second issue.

19

## CONCLUSION

For the above reasons, we conclude that the district court has subject-matter jurisdiction over HISD's ultra vires claims and rule challenge and that the district court did not err in denying the plea to the jurisdiction or abuse its discretion in granting the temporary injunction. Accordingly, we affirm the district court's order.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Baker and Triana
  Dissenting Opinion by Justice Baker

Affirmed

Filed:  December 30, 2020